IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


PAMELA J. TAYLOR                                                              PLAINTIFF


           v.                    Civil No. 2:14-cv-02242-PKH-MEF


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

    Plaintiff, Pamela Taylor, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits ("DIB"), disabled widow's insurance benefits ("DWIB")[1], and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

    Plaintiff filed her applications for DIB and SSI on April 4, 2012, and February 24, 2012, respectively, alleging an onset date of March 1, 2011, due to back problems, hip and leg pain, a

---

[1] DWIB is available to disabled widows or widowers between the ages of 50 and 60.  *See* https://faq.ssa.gov/link/portal/34011/34019/Article/3766/Who-can-get-Social-Security-survivors-benefits-and-how-do-I-apply.

ruptured breast implant, ankle pain due to a history of a broken ankle, anemia, pain related to a history of a broken wrist, fibromyalgia, depression, and anxiety with panic attacks. Tr. 115-120, 121-124, 161-162, 178, 193, 207-208. Following her husband's death in 2012, the Plaintiff filed an application for DWIB based on her husband's earnings records on January 17, 2013, alleging the same onset date and impairments. Tr. 126-133, 146, 149. Records reveal that the Plaintiff was married to John Taylor in 1990. Tr. 121, 125. Although they later separated, the parties never divorced.

The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 56-85. An Administrative Law Judge ("ALJ") held an administrative hearing on April 18, 2013. Tr. 33-55. Although represented by counsel, the Plaintiff did not appear at the hearing.

At the time of the hearing, Plaintiff was 53 years old and possessed a high school education. Tr. 27, 115. She had past relevant work ("PRW") experience as an apartment manager, delivery driver, cashier, rental property manager, and liquor store owner. Tr. 153-160, 179, 230, 239, 275.

On July 19, 2013, the ALJ concluded that the Plaintiff's ruptured silicone left breast implant, disorders of the spine, panic disorder, anxiety, and depression were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 21-23. He determined that the Plaintiff could perform light work requiring frequent handling and fingering bilaterally and frequent operation of foot controls with her left foot. Tr. 23. However, the ALJ found that her mental impairments limited her to work where the interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote with few variables and little judgment; and, the supervision required is simple, direct, and concrete. With the assistance of a vocational expert, the ALJ decided that the Plaintiff could perform work as a housekeeper, inspector, and machine tenderer. Tr. 27.

The Appeals Council denied Plaintiff's request for review on September 15, 2014. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for Report and Recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 11, 12.

## II.  Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

3

laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.   Medical Evidence:

At the outset, the Court notes that the Plaintiff alleges an onset date of March 1, 2011. The Plaintiff has submitted a number of medical records predating her alleged onset date. We consider these records only to the extent that they lay the predicate for the impairments existing during the relevant period.

In 2002, the Plaintiff sought treatment for a fractured right ankle. Tr. 340-341. Records also indicate that she underwent surgery to have infected hardware removed.

On July 9, 2006, the Plaintiff was involved in a motorcycle accident. X-rays of her cervical spine showed spurring at C5-6 and C6-7 with some calcification from the C4 through the C7 levels. Tr. 338. Further, x-rays of her lumbar spine revealed mild degenerative changes, especially at the

4

L2-3 level with spurring, disc space narrowing, and slight retrolisthesis and mild spurring at the L3-4 level. Tr. 339.

On May 15, 2009, Plaintiff saw Dr. Danny Silver at Oxygen Urgent Care Center for complaints of chronic lower back pain, carpal tunnel syndrome ("CTS"), leg cramps at bedtime, and anxiety. Tr. 333. Her medications included Lorcet, Roxicodone, and Xanax. When she returned on June 10, 2009, she reported continued back pain, numbness in her hand, depression, and anxiety. Tr. 332.

On July 15, 2009, she reported a flare-up of her CTS. She had a positive Tinel's sign bilaterally and tenderness in her lumbosacral spine. Tr. 331. The Plaintiff returned the following month with pain in the left side of her neck as well as her back. Dr. Silver noted tenderness in the left shoulder, deltoid area, and lower back. Tr. 330.

On September 9, 2009, the Plaintiff reported continued chronic pain in her neck and back, as well as increased stress. Tr. 329. The following month, she complained of worsening neck and back pain, in addition to psychological symptoms such as lack of energy. Tr. 328.

On November 5, 2009, the Plaintiff reported improvement in her energy level, after beginning thyroid medication. Tr. 327. Her back continued to hurt, and the pain in her arms reportedly disrupted her sleep. By December 2, 2009, however, her back pain had improved with medication. Tr. 326. Unfortunately, the pain returned in January 2010, with neck pain and increased stress. Tr. 325.

On February 24, 2010, Dr. Terry Efird conducted a consultative psychological evaluation. Tr. 238-242. Plaintiff reported feeling depressed and anxious most of the time with a decreased interest in activities, sleep problems, decreased appetite, lack of energy, feelings of guilt, and problems making decisions. She reported experiencing anxiety attacks four times a week without

5

medication, with the frequency decreased to once every two weeks when taking her medication. Her alleged panic symptoms included an accelerated heart rate, sweating, shaking, breathing difficulties, chest pain, fear of losing control, fear of dying, numbness or tingling, and chills and hot flashes. Although the Plaintiff reported outpatient mental health treatment approximately 10 years prior, she admitted to no recent treatment. Further, she denied inpatient psychiatric treatment, alleging that her pain specialist generally prescribed Xanax. Dr. Efird noted that the Plaintiff's mood was normal to anxious and her affect appropriate to content. Her speech was a little fast and loud, she reported hearing voices, and her fund of knowledge suggested low average intelligence. However, the doctor found no remarkable indications of acute emotional distress. Accordingly, Dr. Efird diagnosed depressive disorder, not otherwise specified; panic disorder, without agoraphobia; and, personality disorder, not otherwise specified, with cluster B traits. He felt she had the capacity to perform basic cognitive work tasks, had adequate attention and concentration, and did not appear to have any remarkable problems with persistence or pace.

On April 21, 2010, the Plaintiff returned to Dr. Silver's office with complaints of lower back and right shoulder pain. Tr. 324. She had reportedly fallen off the porch two weeks prior. He noted right shoulder tenderness and pain with abduction greater than 45 degrees. Tr. 324.

The Plaintiff was hospitalized for 10 days in September 2010. Tr. 334-337. X-rays and a CT scan of her right shoulder revealed a lytic lesion for which an MRI or biopsy was recommended. The Plaintiff failed to follow-up with either. During her stay, she also underwent a myocardial perfusion stress test after diagnoses of non-ST elevation myocardial infarction, hypertension, diabetes, and an enzyme leak from an unknown source. A CT scan of her chest showed subsegmental atelectasis at the bases of both lungs, a noncalcified pulmonary nodule, and

a possible implant leak of the left breast. The radiologist recommended an ultrasound of the left breast for correlation. However, she also failed to follow through with this recommendation.

On May 13, 2011, Plaintiff presented in the emergency room ("ER") for complaints of neck and lower back pain. Tr. 252-255, 310-313. She had been involved in an automobile accident six days prior. The Plaintiff claimed that pain and tingling radiated into her left hip. An examination revealed tenderness in the lower back and neck, but x-rays were within normal limits. Accordingly, the doctor diagnosed neck and lumbar sprain.

Plaintiff returned to the ER on June 8, 2011, complaining of pain and swelling in her left hand and a sore left hip. Tr. 248-251, 314-317. She had reportedly fallen. Her left forearm was tender and swollen with a limited range of motion. X-rays showed a fracture of the left distal radius. The doctor prescribed Dilaudid, a splint and sling, and advised her to follow-up in one week with an orthopedist. However, she failed to do so.

On July 10, 2011, Plaintiff presented in the ER with continued pain in her hip, neck, and arm. Tr. 246-247, 318-319. She was still wearing the splint for her fractured radius, so the doctor did not examine her arm. However, in spite of her complaints of pain and burning down her left lateral hip from her buttocks to her left knee, an examination revealed a normal gait with no tenderness, pain with motion, or crepitus. Further, her back exhibited normal alignment and she had a full range of motion in her left hip. The doctor diagnosed hip pain, neck pain, and wrist pain and prescribed Prednisone. T. 247.

X-rays of her left hip conducted on May 3, 2012, showed minimal hypertrophic degenerative changes. Tr. 258-263, 321-323. X-rays of her lumbar and thoracic spine showed slight scoliosis and small anterior osteophytes. Tr. 259-260.

On May 10, 2012, Dr. Clifford Evans performed a consultative physical exam. Tr. 265-270. His examination of the Plaintiff revealed a limited range of motion in her left wrist; diminished Achilles reflexes bilaterally; difficulty squatting due to pain in her left hip and ankle; and, a normal grip bilaterally. Dr. Evans diagnosed generalized osteoarthritis, a ruptured silicone implant in her left breast, anxiety/depression, hypertension, and migraine headaches. He assessed no physical limitations, instead finding that any limitations she might have would arise from her psychological problems. At this time, her medications included Oxycodone, Lisinopril, and Xanax.

On May 16, 2012, Dr. Ronald Crow reviewed the Plaintiff's medical records and completed an RFC assessment. Tr. 272-274. He, too, found no severe physical impairments. Dr. Charles Friedman affirmed this assessment on October 22, 2012. Tr. 301-303.

On July 24, 2012, Dr. Robert Spray performed a consultative mental exam. Tr. 275-279. At the time of this exam, records reveal that the Plaintiff had been out of Xanax for four months. She reported depressed mood, poor appetite, and sleep disturbance. She also complained of panic attacks manifesting in tightness in her chest, nervousness, feeling like she was going crazy, feeling like she was having a heart attack, and a rapid heartbeat. Her panic attacks reportedly occurred when she was in crowds or around certain people. The Plaintiff also reported episodes of uncontrolled anger. Further, she admitted using marijuana at times for pain control. Dr. Spray noted that the Plaintiff's mood was depressed and anxious. She reported flashbacks of past abuse, as well as audio and visual hallucinations that occurred twice a week. Tr. 276. Dr. Spray diagnosed panic disorder without agoraphobia; depression, not otherwise specified, with psychotic features; and, dependent personality disorder, and assessed a global assessment of functioning score of 40-50. Tr. 277. He found her social skills adequate, but indicated that she was somewhat

avoidant. Additionally, she exhibited moderate difficulty with delayed recall, mild difficulty with attention and concentration, adequate persistence and pace, and decreased motivation due to depression and anxiety.

On August 14, 2012, Dr. Abesie Kelly completed a mental RFC assessment and a psychiatric review technique form. Tr. 280-300. After reviewing the Plaintiff's medical records, she concluded that the Plaintiff would have moderate limitations in the following areas: carrying out detailed instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instruction and responding appropriately to criticism from supervisors; responding appropriately to changes in work setting; and, setting realistic goals or making plans independently of others.

**IV.     Discussion:**

The Plaintiff raises the following issues on appeal:  1) the Plaintiff has additional severe impairments that were not considered by the ALJ; 2) the Plaintiff's subjective complaints are credible and supported by the medical evidence; 3) the record does not contain an RFC assessment from a treating source; 4) the RFC determination does not accurately reflect the Plaintiff's limitations; and, 5) the Plaintiff cannot perform the jobs identified by the ALJ.  The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**A.     Severe Impairments:**

The Plaintiff insists that CTS in her right wrist and pain in her right arm and shoulder constitute severe impairments. At step two, a claimant has the burden of providing evidence of

9

functional limitations in support of their contention of disability. *Baker v. Colvin*, July 22, 2015 (8th Cir. 2015); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

The ALJ concluded that the Plaintiff's upper extremity impairments are not severe. However, the Plaintiff contends that these impairments are severe and insists they affect her ability to lift, carry, push, pull, reach, handle, and finger objects. We disagree.

Evidence predating the Plaintiff's alleged onset date reveals a diagnosis of CTS with some reports of pain and numbness, as well as shoulder and arm pain. An examination in April 2010 revealed limited abduction in the right shoulder after she fell off her porch. And, x-rays in September 2010 showed a lytic lesion in the right humeral head that required further evaluation. However, the Plaintiff failed to follow-up with an MRI or biopsy as recommended. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility). Moreover, she did not seek out further treatment for her pain until June 2011, at which time the ER doctor diagnosed her with a fracture of the left distal radius. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). The Plaintiff then failed to follow-up with an orthopedist as directed. *Id*. Instead, she returned to the ER one month later and received a prescription for Prednisone to treat her wrist, hip, and neck pain. From June 2011 until May 2012, the record is silent. Then, on May 10, 2012,

10

Dr. Evans conducted a physical exam revealing a slight limitation in the range of motion in her left wrist. Interestingly, her bilateral grip strength was intact, she exhibited a normal range of motion in her shoulders and hands, and Dr. Evans assessed no physical limitations. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

Accordingly, it is the opinion of the undersigned that the Plaintiff's upper extremity impairments are not severe, as they amount to only a slight abnormality that would not significantly limit her physical ability to do basic work activities.

### B. <u>Subjective Complaints:</u>

The Plaintiff also argues that the ALJ failed to perform a proper credibility analysis. The ALJ is required to consider all the evidence relating to the Plaintiff's subjective complaints, including: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of her pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of her medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While the ALJ may not discount a Plaintiff's subjective complaints solely because the medical evidence fails to support them, he "may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Id.*; *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted).

Although preferred, the Eighth Circuit does not require the ALJ to cite to *Polaski* or explicitly discuss each factor. *See Buckner v. Astrue*, 646 F.3d 549, 558-559 (8th Cir. 2011); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (ALJ "adequately, if not expressly," applied *Polaski* factors where he cited and conducted credibility analysis pursuant to 20 C.F.R. § 416.929, which "largely mirror[s] the *Polaski* factors"). If the ALJ discredits a claimant's credibility and

gives good reason for doing so, the Eighth Circuit has held that it will defer to the ALJ's judgment. *Schultz*, 479 F.3d at 983; *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

Here, the ALJ discussed the medical evidence of record, and stated that he considered each of the Plaintiff's alleged symptoms in accordance with the regulations. *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (holding ALJ properly considered the combination of Plaintiff's impairment where he discussed each of the Plaintiff's impairments, detailing the medical records for each, and concluded that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment). He then discredited her subjective complaints for the following reasons: 1) she failed to seek out consistent treatment for her impairments; 2) she failed to follow-up concerning her shoulder lesion, fractured wrist, and ruptured silicone breast implant; 3) the treatment prescribed to her was conservative in nature; 4) x-rays and physical exams revealed only "minimal" or "slight" limitations; 5) her pain and anxiety were responsive to treatment via medication; 6) she failed to seek out professional mental health treatment; and, 7) her activities of daily living did not support her allegations of disability.[2] *See Edwards*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with Plaintiff's allegations of disabling pain); *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling); *Brown v.*

---

[2] Although the Plaintiff did not appear or testify at the administrative hearing, she did complete two adult function reports indicating that she could drive, shop in stores for groceries, attend church, attend parties for her grandchildren, prepare simple meals, clean her home, do laundry, care for her personal hygiene, and care for her dogs. Tr. 163-170, 198-206.

*Barnhart*, 390 F.3d 535, 540-541 (8th Cir. 2004) (holding that the ALJ properly discounted treating physician's opinion where record showed the Plaintiff was non-compliant with prescribed treatment without good reason); *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (lack of supporting medical evidence is one factor that may be considered in assessing credibility); *Edwards*, 314 F.3d at 966 (finding that the claimant's ability to shop, drive short distances, attend church, and visit relatives was inconsistent with her assertion of disabling pain); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (finding that the claimant's ability to "dress and bathe herself," and "do some housework, cooking, and shopping" contradicted her "testimony regarding the severity of her pain and disability"). After reviewing the entire record, the undersigned concludes that the ALJ properly evaluated the Plaintiff's subjective complaints under *Polaski*, and provided good reasons for his credibility determination.

      **C.**    **Develop the Record:**

Next, the Plaintiff contends that the ALJ's failure to obtain an RFC assessment from a treating or examining medical source requires reversal. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

Contrary to the Plaintiff's assertion, the ALJ is not required to obtain an RFC assessment from a treating or examining doctor. Here, the record contains a physical consultative examination; two consultative mental examinations; a mental and physical RFC assessment completed by a non-examining, consultant; and, treatment records documenting her treatment during the relevant period. Although the Plaintiff did not testify at the administrative hearing, she did complete several adult function and pain reports that the ALJ also incorporated into his opinion. As such, the undersigned finds that the record contained sufficient evidence upon which the ALJ could base his determination that the Plaintiff is not disabled. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess residual functional capacity); *Stormo v. Barnhart*, 377 F.3d 801, 807-808 (8th Cir. 2004) (medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported residual functional capacity assessment).

Relying on Dr. Spray's report, the Plaintiff also argues that the ALJ should have obtained an RFC assessment from him to extrapolate the limitations that would result from her panic attacks. We note, however, that the overall record does not support the intensity and frequency of panic attacks reported to Dr. Spray. In fact, at the time of Dr. Spray's assessment, the Plaintiff had been out of Xanax for four months. Accordingly, we do not find Dr. Spray's assessment to be a reliable indicator of the Plaintiff's level of mental functioning on a daily basis. As such, the ALJ was under no obligation to recontact Dr. Spray.

**D. RFC:**

The Plaintiff also contests the ALJ's RFC determination, stating that it does not take into account all of her impairments. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her

RFC.  *Vossen v. Astrue,* 612 F. 3d 1011, 1016 (8th Cir. 2010).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

   The ALJ determined that the Plaintiff could perform light work requiring frequent bilateral handling and fingering and operation of foot controls with her left foot.  However, he limited her to work where the interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote with few variables and little judgment; and, the supervision required is simple, direct, and concrete.  The Plaintiff claims the ALJ failed to consider all of her impairments in combination.  She takes issue with his failure to include specific limitations associated with her CTS, wrist fracture, shoulder problem, fractured ankle, and hip, neck, and back pain, arguing that she can perform sedentary work at best.  While we agree that range of motion deficits have been noted in these areas at various times prior to and during the relevant time period, the overall record does not support a finding of permanent limitations associated with any of these impairments.  X-rays of the back and neck have revealed only minimal findings, and physical exams do not support the level of impairment now alleged.  In fact, in spite of her allegations of

disabling shoulder pain, the Plaintiff failed to follow-up with an MRI or biopsy as was recommended. Moreover, Dr. Evans' physical exam in 2012 documented only a slightly decreased range of motion in the wrist and some pain in the right ankle and hip with squatting. These limitations were so insignificant that his overall assessment was of no physical limitations. Dr. Crow and Dr. Friedman came to the same conclusion. Tr. 272-274, 301-303. Therefore, the evidence does not support the Plaintiff's claim that she cannot perform the requirements of light work.

Giving the Plaintiff the benefit of the doubt, the ALJ concluded that she could perform a range of light work. We find substantial evidence supports the ALJ's RFC determination.

### E. Step Five:

In her final argument, the Plaintiff asserts that the hypothetical question posed to the vocational expert did not include all of her limitations, thereby invalidating the expert's testimony concerning the jobs that would be available to the Plaintiff. However, "[t]he ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). Here, the ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. *Id*. Based on our previous conclusion that the ALJ's RFC findings are supported by substantial evidence, we hold that the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*, *see also* Lacroix, 465 F.3d at 889.

## V. Conclusion:

Based on the foregoing, we recommend affirming the decision of the ALJ and dismissing the Plaintiff's Complaint.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of September, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE